It is not disputed that the goods were subject to duty in the amount exacted of the plaintiffs when they were deposited in bond. Being then subject to these duties, they remained so, in the absence of any treaty or statute of congress relieving them from duty. No such treaty or statute is invoked, but the argument is that the section means to allow the withdrawal of dutiable goods upon the payment of such duties as they would have been subject to if they had been imported at the time of the withdrawal. The language of the section does not require such a construction. It requires payment of the duties to which the goods are lawfully subject at the time of withdrawal. This means the duties which have become an accrued liability. Duties accrue at the date of the importation and entry of merchandise, and on that date a lien attaches to the goods and a debt for the amount accrues from the importer to the government. Warehousing is a privilege given by the statutes to which the section relates, by which, in lieu of compelling the importer to make immediate payment of his debt, he is permitted to postpone payment until he withdraws the merchandise from the warehouse for consumption. The privilege is not conferred in order that he may thereby escape by some contingency the payment of his debt. It does not contemplate giving him an advantage in that regard over other importers who pay their duties upon the entry of their goods.

Warehoused goods on withdrawal for consumption pay duties at the same rate and amount as provided by law when imported and entered, unless there is some provision of the existing tariff laws, or in subsequent legislation by congress, providing for the payment of a different rate or amount, and applicable to the goods in warehouse. The United States have never been devested of their right to the duties which accrued when the goods were imported and warehoused, because neither the treaty of peace, by any of its provisions, nor any statute passed subsequently to the one imposing the duty, has impaired or affected that right.

None of the decisions of the supreme court cited for the plaintiffs conflict with the conclusions thus reached. The observations in the opinions are to be read as addressed to the facts of the particular case under consideration by the court, and, so read, contain nothing to sanction the argument for the plaintiffs.

Judgment is ordered for the defendant.

_____

LAVˉRGE v. UNITED STATES.

(Circuit Court, S. D. New York. November 6, 1902.)

No. 2,937.

1. TARIFF ACT—TAX ON COVERINGS.
   Where boxes used as coverings for imported tobacco were not the usual coverings in which such tobacco was imported, but were of no value, and were thrown away or destroyed after the tobacco had been removed, they were not taxable under Act June 10, 1890, § 19 [U. S. Comp. St. 1901, p. 1924], declaring that if there be used for covering or holding imported merchandise, whether dutiable or free, any unusual

article or form, designed for use otherwise than in the bona fide transportation of such merchandise, additional duty shall be levied thereon.

Appeal by the importers from a decision of the board of general appraisers which affirmed the classification by the collector of the importation in question.

Jacob Fromme, for the importers.

Charles D. Baker, Asst. U. S. Atty.

TOWNSEND, Circuit Judge. The articles in question are boxes used as coverings for Sumatra tobacco, and were classified for duty at 35 per cent. ad valorem, under the provisions of paragraph 208, Tariff Act 1897 [U. S. Comp. St. 1901, p. 1647], on the ground that said boxes come within that portion of section 19 of the act of June 10, 1890 [U. S. Comp. St. 1901, p. 1924] which provides that "if there be used for covering or holding imported merchandise, whether dutiable or free, any unusual article or form designed for use otherwise than in the bona fide transportation of such merchandise to the United States, additional duty shall be levied and collected upon such material or article at the rate to which the same would be subject if separately imported." It is undisputed that the boxes are not the usual coverings of imported tobacco, but there is no evidence that such boxes were designed for use otherwise than in the bona fide transportation of such merchandise to the United States. In fact, the testimony shows that they are not designed for any other use, but are thrown away or cut up into kindling wood.

The decision of the board of appraisers is therefore reversed.

---

UNITED STATES v. BROWN et al.

(Circuit Court, S. D. New York. November 19, 1902.)

1. FALSE IMPERSONATION—REVENUE OFFICERS—INDICTMENT.

An indictment charging that defendants, unlawfully and feloniously, falsely represented themselves to be revenue officers of the United States, and in such assumed character did demand and receive $200 from I. for a pretended violation by the latter of Act Cong. June 13, 1898 [U. S. Comp. St. 1901, p. 2293], in respect of knowingly and willfully buying washed revenue stamps, etc., and with having such washed and restored revenue stamps in possession knowingly and without lawful excuse, as prohibited by Rev. St. § 5448 [U. S. Comp. St. 1901, p. 3679], was sufficient.

2. SAME.

An indictment charging that defendants, with intent to defraud one I., unlawfully and feloniously did falsely assume and pretend to be officers and employés acting under the authority of the United States, to wit, revenue officers and employés, and in such pretended character did fraudulently demand and obtain from I. a sum of money, to wit, $200, etc., sufficiently stated the offense described by Act April 18, 1884 (1 Supp. Rev. St. p. 425 [U. S. Comp. St. 1901, p. 3679]), prohibiting the impersonation of a United States officer, etc.

Points at issue:

The defendants, Brown and Harnett, were jointly indicted under section 5448, Rev. St. U. S. [U. S. Comp. St. 1901, p. 3679], and the act of April 18,